**Steve D. Larson,** OSB No. 863540
Email: slarson@stollberne.com
**Scott A. Shorr,** OSB No. 961873
Email: sshorr@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Suite 500
Portland, Oregon 97204
Telephone:     (503) 227-1600
Facsimile:     (503) 227-6840

**Robert A. Izard** (to be admitted *pro hac vice*)
Email: rizard@izardnobel.com
**Mark P. Kindall** (to be admitted *pro hac vice*)
Email: mkindall@izardnobel.com
**IZARD NOBEL LLP**
29 South Main Street, Suite 215
West Hartford, CT 06017
Telephone: (860) 493-6293
Facsimile: (860) 493-6290

**Attorneys For Plaintiffs**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CHRISTOPHER W. WOERNER and MILDRED POWELL, individually and on behalf of all others similarly situated <br><br> Plaintiffs, <br><br> v. <br><br> RONALD SAXTON, RODERICK C. WENDT, R. NEIL STUART, and JELD-WEN EMPLOYEE STOCK OWNERSHIP & RETIREMENT PLAN, <br><br> Defendants. | Case No. <br><br><br> **CLASS ACTION ALLEGATION COMPLAINT** <br><br> (ERISA Violations: 29 U.S.C. §1054(g); 29 U.S.C. §1104) |

Plaintiffs Christopher W. Woerner ("Woerner") and Mildred Powell ("Powell") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Complaint against Defendants under the Employee Retirement Income Security Act of 1974 ("ERISA") and, in support thereof, state the following:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the claims asserted in this action pursuant to ERISA Section 502(e), 29 U.S.C. § 1132(e).

2.      Venue is proper in this district by virtue of ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), and Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. §§ 1391(b) and (c), because certain Defendants may be found in this district.

## PARTIES

**Plaintiffs**

3.      Woerner was a Jeld-Wen employee and was an ERISA participant of the Jeld-Wen Employee Stock Ownership & Retirement Plan during the relevant period. Woerner left the employment of Jeld-Wen in March 2009.

4.      Powell was a Jeld-Wen employee and was an ERISA participant of the Jeld-Wen Employee Stock Ownership & Retirement Plan during the relevant period. Powell left the employment of Jeld-Wen in March 2009.

**Defendants**

5.      Defendant Jeld-Wen Employee Stock Ownership & Retirement Plan (the "Plan") is an employee benefit plan within the meaning of ERISA Sections 3(3) and 3(2)(A), 29 U.S.C. §§ 1002(3) and 1002(2)(A). It operates as a defined-contribution plan within the meaning of ERISA

Page 1 - CLASS ACTION ALLEGATION COMPLAINT

Section 3(35), 29 U.S.C. § 1002(35). It is designed to be an employee stock ownership plan ("ESOP") that meets the requirements of Section 4975(e)(7) of the Internal Revenue Code (the "Code") and Section 54.4975-11 of the Regulations promulgated by the Secretary of the Treasury that pertain to the Code. Jeld-Wen established the Plan purportedly for the exclusive benefit of, and to provide retirement benefits for, employees of Jeld-Wen.

6.      During the relevant period, Roderick C. Wendt was the President and Chief Executive Officer of Jeld-Wen. Wendt is also a trustee, administrator, and fiduciary of the Plan. On information and belief, Wendt resides or can be found in Portland, Oregon.

7.      During the relevant period, Ronald Saxton was the Executive Vice President and Chief Administrative Officer of Jeld-Wen. Saxton is also a trustee, administrator, and fiduciary of the Plan. Saxton resides or can be found in Portland, Oregon.

8.      During the relevant period, R. Neil Stuart ("Stuart") was the Executive Vice President and Chief Financial Officer of Jeld-Wen. Stuart is also a trustee, administrator, and fiduciary of the Plan. Stuart resides or can be found in Lake Oswego, Oregon.

## FACTUAL ALLEGATIONS

9.      The Plan promises that employer and employee contributions will be valued using Jeld-Wen stock. Jeld-Wen stock is not publically traded, so pursuant to the terms of the Plan, its value must be determined on an annual basis. (Exhibit A, Plan §§ 2.5 & 7.5.)

10.     Participants build equity in the Plan by a combination of their own salary deferrals ("employee contributions") and Jeld-Wen's contributions ("employer contributions"). All of the contributions are valued going forward using Jeld-Wen stock.

11.     As alleged above, Plaintiffs are no longer employed with Jeld-Wen.

Page 2 - CLASS ACTION ALLEGATION COMPLAINT

12.     The Plan allows an employee who has severed from service, but who has not yet reached the age of 55, to take a distribution of the proceeds of their *employee* contributions. (Ex. A, Plan § 10.4(b)(ii)(a).)

13.     Severed employees under the age of 55 are not permitted to take distributions of the proceeds of their *employer* contributions. (Ex. A, Plan § 10.4(b)(ii)(b).) These proceeds, under § 7.1(h), are accounts that "shall also be maintained for all former Participants who still have an interest in the Plan." Once the employee reaches the age of 55, they are entitled to take a distribution of the *employer* contributions to the Plan.

14.     Under the Plan, as it existed prior to November 19, 2010, an employee's ESOP account was valued at the time of his termination. The Plan provided:

> § 7.6 - Valuation of Accounts Upon Termination.
>
> Should a Participant terminate employment, Retire, become Disabled or die, his Account shall be valued on the Valuation Date next preceding or coinciding with such occurrence, adjusted for (a) any payments to or withdrawals made by the Participants, (b) Company Stock released from the Suspense Account, and (c) Elective Deferrals made by the Participant and any Employer Contributions subsequent to the preceding Valuation Date.  If the terminated participant's Account is not fully distributed to him or segregated prior to a subsequent Valuation Date, the valuation shall be made as provided under Section 7.8 herein.

15.     Under the Plan, as it existed prior to November 19, 2010, the accounts of severed employees were held in the Plan, where they were credited with interest as follows:

> § 7.8(b) - Undistributed Accounts.
>
> Deferred Distribution.     If the time of distribution of the Participant's Account is deferred until after the last day of the Plan Year following the Plan Year during which the Participant's Separation From Service occurred, the value of the Participant's Account shall be the value of the Participant's Account on the December 31 coinciding with or following the Participant's

Page 3 - CLASS ACTION ALLEGATION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Separation From Service.  The Account shall be credited with interest at the Local Passbook Rate in effect for such year.  The Account shall not be credited with any further contributions, Forfeitures, or for any appreciation or depreciation in the value of Company Stock held by the Trust after the December 31 Valuation Date used to value the Account.

16.     "Local Passbook Rate," for the purposes of § 7.8(b), "shall mean the Wells Fargo Bank passbook rate of interest credited from time to time to savings accounts; however, the minimum rate shall be 3% and the maximum rate shall be 5%." (Ex. A, Plan § 2.40.)

17.     Since Woerner  and Powell had not yet reached 55 at the time of their severance from service, the Plan maintained the proceeds from their employer contributions, valued in cash, and credited it with approximately 3% annually. This continued until 2010.

18.     In fact, Woerner, Powell, and the Class were explicitly prohibited by the Plan from continued participation in the Plan:

§ 9.4 - <u>Separation From Service</u>.

If a Participant shall Separate From Service for any reason other than those specified in the preceding Sections of this Section 9, participation in the Plan shall cease, and the Participant's Plan Benefit shall be distributed pursuant to the provisions of Section 10 of the Plan.

19.     Since Woerner, Powell, and the Class were not allowed to participate in the Plan, they were required to wait for years, until they reached the age of 55, to recover all of their promised employer contributions.

**<u>The November 19, 2010 Amendment</u>**

20.     On November 19, 2010, Jeld-Wen amended the Plan. (Exhibit B, Plan Amendment.)

Page 4 - CLASS ACTION ALLEGATION COMPLAINT

21.    The amendment eliminated the provisions that allowed employer contributions of terminated employees to be held in the Plan and receive interest at the Local Passbook Rate. (Ex. B, Amendment §§ 2.40 & 7.8.)

22.    The amendment had the effect of taking terminated employees' accounts and revaluing them with, or reinvesting them in, Jeld-Wen stock. (Ex. B, Amendment § 7.8.)

23.    This amendment was made retroactive to January 1, 2010.

24.    As a result of the amendment, Woerner's and Powell's accounts were revalued and/or invested using the balance as of January 1, 2010.

25.    As a result of the amendment, interest was deleted from Woerner's and Powell's accounts.

26.    Additionally, as a result of the amendment, Woerner's and Powell's accounts were revalued and/or reinvested using the outdated January 1, 2010, value of $417 per share, instead of the value as of November 19, 2010, which would have been lower.

27.    By November 19, 2010, it was evident that Jeld-Wen stock had declined in value since January 1, 2010. In fact, less than six weeks later, the stock was valued at $364 per share.

28.    This drop in value of Jeld-Wen stock was foreseeable because the stock had been in a free fall since 2007. At the end of 2007, the stock was valued at $746 per share. By the end of the following year, its value fell to $507 per share. It continued its slide in 2009, falling to $417 by year's end. This continued through at least the end of 2010, when it reached $364 per share. In all, the stock's value fell over 51% since 2007.

29.    As a result of the retroactive revaluation and/or investment, Plaintiffs' accounts lost tens of thousands of dollars.

Page 5 -  CLASS ACTION ALLEGATION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

30.     Additionally, in 2010, Woerner and Powell were charged, respectively, a 1% administrative fee, which they otherwise would not have borne had they remained earning passbook interest.

31.     On information and belief, this fee was charged to all Plan participants in 2010.

32.     On information and belief, the total fees charged to all Plan participants in 2011 exceeded $3.65 million. These fees grossly exceeded actual expenses of the Plan in 2010 which, according to the Form 5500 filed by the Plan, were $256,146. In other word, the participants were charged fees that were over *14 times* the actual expenses.

33.     On information and belief, in 2011, the Plan charged participants fees of approximately 6.7%.

34.     On information and belief, the total fees charged to Plan participants in 2011 were almost $10.2 million. These fees grossly exceeded actual expenses of the Plan in 2011, which, according to the Form 5500 filed by the Plan, were $42,096. In other word, the participants were charged fees that were over *240 times* the actual expenses.

35.     Defendants did not provide timely notice to participants of the amendment in a manner calculated to be understood by the average plan participant and did not timely provide sufficient information to allow applicable individuals to understand the effect of the plan amendment.

**Administration of the Plan**

36.     During the relevant time period, Defendants Wendt, Saxton, and Stuart were the administrators of the Plan.

Page 6 - CLASS ACTION ALLEGATION COMPLAINT

37.    During the relevant time period, Defendants Wendt, Saxton, and Stuart were also the Trustees of the Plan.

38.    During the relevant time period, Defendant Wendt was the President and Chief Executive Officer of Jeld-Wen.

39.    During the relevant time period, Defendant Saxton was the Executive Vice President and Chief Administrative Officer of Jeld-Wen.

40.    During the relevant time period, Defendant Stuart was the Executive Vice President and Chief Financial Officer of Jeld-Wen.

41.    The individual Defendants (Wendt, Saxton, and Stuart) were intimately acquainted with the ongoing financial condition of Jeld-Wen by virtue of their positions as officers and directors of Jeld-Wen.

42.    The individual Defendants knew that Jeld-Wen shares were worth less than $417 on November 19, 2010, but either invested or valued severed employees' accounts using this outdated, retroactive value for the stock.

## CLASS-ACTION ALLEGATIONS

43.    Pursuant to Rule 23, Fed. R. Civ. P., Woerner brings this action, as it pertains to the claims asserted in Counts I-III and V, on behalf of himself and a Class of:

> All participants in the Jeld-Wen Employee Stock Ownership & Retirement Plan, who severed from service prior to January 1, 2010, whose accounts were valued after their severance, but were subsequently revalued using Jeld-Wen stock by virtue of the November 19, 2010, amendment to the Plan. (the "Terminated Class").

Page 7 - CLASS ACTION ALLEGATION COMPLAINT

44.     Powell brings this action, as it pertains to the claim asserted in Count IV, on behalf of herself and a second Class of:

> All participants in the Jeld-Wen Employee Stock Ownership & Retirement Plan who, beginning in 2010, were charged fees by the Plan. (the "Expense Class").

45.     While exact number of class members is unknown, Plaintiffs believe there are hundreds of individuals who would fall within the Class definitions. The Class is sufficiently numerous that joinder of all members is impracticable. Class members are dispersed across the United States, and, although the benefits due are significant to them, the amounts are too small to warrant individual lawsuits. In addition, hundreds of individual suits would impose an undue burden on the courts.

46.     Common questions of law and fact exist, including the following, as to the Terminated Class:

> a.     whether the revaluation violated ERISA's and/or the Plan's anti-cutback provisions;
>
> b.     whether Defendants violated ERISA § 204(h);
>
> c.     whether Defendants breached their fiduciary duties by valuing and/or investing the accounts of former employees retroactively in Jeld-Wen stock, which had already declined in value;
>
> d.     whether Defendants breached their fiduciary duties and violated the terms of the Plan by forcing the Class to participate in the ESOP; and
>
> e.     whether Defendants breached their fiduciary duties by investing and/or valuing the accounts of Plaintiffs and Class members with Jeld-Wen stock.

47.     Common questions of law and fact exist, including the following, as to the Expense Class:

Page 8 - CLASS ACTION ALLEGATION COMPLAINT

a.    whether Defendants' breached their fiduciary duties of loyalty, prudence and care when assessing fees that grossly exceeded expenses.

48.    The only individual question affecting members of either the Terminated or Expense Classes are the precise amount to which each Class member is entitled. The Terminated Class can be determined simply by calculating the difference between the accounts using the Passbook Saving Rate and Jeld-Wen stock. The Expense Class can be determined simply by calculating the amount of fee charged in excess of the actual expenses.

49.    Plaintiffs' claims are typical of the claims of the other Class members because their accounts were revalued using Jeld-Wen stock and he was charged excessive fees.

50.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are identical to the interests of the other Class members.

51.    A class action is appropriate under Rule 23(b)(1) because the prosecution of separate actions by individual Class members of either Class would create the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants or adjudications as to individual Class members that would affect the interests of other Class members not parties to the adjudications.

52.    A class action is appropriate under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to both Classes, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes.

53.    A class action is appropriate under Rule 23(b)(3) because common questions of law or fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this case.

Page 9 - CLASS ACTION ALLEGATION COMPLAINT

54.    Proposed Class Counsel will fairly and adequately protect the interests of the Class. Counsel has thoroughly identified and investigated potential claims in this action by consulting with Plaintiffs, by reviewing the Plan documents and Plaintiffs' claims for benefits, and by researching the relevant provisions of ERISA and the caselaw interpreting those provisions. They have significant experience in class-action litigation and have been lead counsel or co-counsel in several successful ERISA class actions. Counsel is willing and able to devote sufficient resources to representing the Class.

**COUNT I**
**Violation of ERISA § 204(g) – Against the Plan**

55.    Plaintiffs repeat and incorporate the allegations contained in the forgoing paragraphs as if fully set forth herein.

56.    This count is brought pursuant to ERISA § 502(a)(1)(B).

57.    ERISA § 204(g) and the Plan prohibit amendments that reduce a vested account of a participant.

58.    The amendment at issue here did not change an investment type, but switched valuation methods from a fixed dollar amount to a floating valuation tied to Jeld-Wen stock.

59.    This is a valuation issue, as opposed to investment, because the Plan has always, even after the amendment, prohibited employees who separated from service (other than retirement) from continued participation in the ESOP.

60.    Prior to the Plan amendment, Woerner's and Powell's vested accounts had been valued at a set dollar amount and would be credited interest at a fixed percentage.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

61.     The November 19, 2010, amendment to the Plan, which occurred after Woerner's and Powell's, and the Class members' benefits had vested and accrued, diminished Plaintiffs' and the Class members' accrued pension benefits by revaluing, as of January 1, 2010, their accounts using Jeld-Wen stock. This revaluation continued annually.

62.     The amendment violated ERISA § 204(g) and the Plan by diminishing the value of the Plan accounts and eliminating guaranteed interest.

63.     The amendment also violated ERISA § 204(g) by eliminating 10.5 months' worth of passbook interest the Class had earned prior to the amendment, as well as using an outdated and inflated stock price.

64.     As a result of the Plan's action, Plaintiffs and the Class suffered damages, including the loss of substantial sums of money to which they had earned and become entitled.

## COUNT II
## Violation of ERISA § 404(a)(1)(D) – Against the Individual Defendants

65.     Plaintiffs repeat and incorporate the allegations contained in the forgoing paragraphs as if fully set forth herein.

66.     This count is brought pursuant to ERISA § 502(a)(2).

67.     The November 19, 2010 amendment resulted in an unlawful cutback of accrued benefits under ERISA § 204(g).

68.     Despite ERISA's prohibition, the individual Defendants nonetheless applied the amendment which resulted in an unlawful cutback.

69.     The individual Defendants breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and

Page 11 -  CLASS ACTION ALLEGATION COMPLAINT

beneficiaries. By administering the Plan to allow cutbacks of accrued benefits, in violation of ERISA § 204(g), the individual Defendants violated ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), by causing and/or permitting the Plan act inconsistently with ERISA.

70.     As a result, the Plan immediately lost approximately 15% of the value of its severed employees' accounts, including Plaintiffs' accounts.

**COUNT III**
**Violation of ERISA § 404(a)(1)(A) & (B) – Against the Individual Defendants**

71.     Plaintiffs repeat and incorporate the allegations contained in the forgoing paragraphs as if fully set forth herein.

72.     This count is brought pursuant to ERISA § 502(a)(2).

73.     This count is pled in the alternative to Counts I and II because if the amendment could be construed as an investment, the individual Defendants breached their fiduciary duties by making a retroactive investment of Woerner's, Powell's, and the Class members' accounts into Jeld-Wen stock.

74.     This count is further pled in the alternative because if the amendment could be construed as a valuation method, the individual Defendants breached their fiduciary duties by valuing the accounts of Class members using an outdated and inflated price for Jeld-Wen stock.

75.     The amendment was passed on November 19, 2010. Jeld-Wen stock had been in a free fall since 2007.

76.     The individual Defendants knew on November 19, 2010, by virtue of their positions as officers and directors of Jeld-Wen, that the stock's value had fallen since the beginning of 2010.

Page 12 -  CLASS ACTION ALLEGATION COMPLAINT

77.     The Plan grants discretion to the individual Defendants on the timing of purchases of

Jeld-Wen stock:

> 12.6     <u>Purchases and Sales of Company Stock</u>.
>
> Company Stock may be purchased, sold and resold from and to any person, including the Company. The Administrator shall direct the Trustee with respect to the purchase and sale of Company Stock by the Plan and the terms and conditions for such purchase or sale.
>
> The Trustee will make purchases of Company stock at a price, or at prices, which, in the judgment of the Administrator, do not exceed the fair market value of such Company Stock . . . The determination of fair market value of Company Stock for all purposes under the Plan shall be made by a qualified independent appraisal pursuant to Section 7.3.

78.     On information and belief, the value of Jeld-Wen stock is determined after the close

of each calendar year.

79.     Rather than seek a current value for Jeld-Wen stock when the amendment was passed

on November 19, 2010, the individual Defendants purchased shares and/or valued accounts using the

January 1, 2010, price for Jeld-Wen stock.

80.     The individual Defendants breached their fiduciary duties under ERISA by failing to

discharge their duties with respect to the Plan solely in the interest of the participants and

beneficiaries (1) for the exclusive purpose of providing benefits to participants and their

beneficiaries; and (2) with the care, skill, prudence, and diligence under the circumstance then

prevailing that a prudent person acting in a like capacity and familiar with such matters would use in

the conduct of an enterprise of like character and like aims, all in violation of ERISA § 404(a)(1)(A)

and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), by causing and/or permitting the Plan to purchase stock

and/or value accounts using an outdated valuation.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

81.     The individual Defendants further breached their fiduciary duties by purchasing stock and/or valuing accounts at the January 1, 2010, price because they knew, from their high ranking positions in Jeld-Wen, that the stock value had declined significantly as of November 19, 2010.

82.     As a result, the Plan immediately lost approximately 15% of the value of its severed employees' accounts.

## COUNT IV
## Violation of ERISA § 404(a)(1)(A) & (B) – Against the Individual Defendants

83.     Plaintiffs repeat and incorporate the allegations contained in the forgoing paragraphs as if fully set forth herein.

84.     This count is brought pursuant to ERISA § 502(a)(2).

85.     After the November 19, 2010 amendment, Woerner and Powell were charged an administrative fee of 1% their account balances.

86.     If this 1% expense fee was charged to every account in the Plan, the Plan would have collected over $3.65 million from individuals' account in 2010 alone.

87.     The actual expenses for the Plan in 2010 totaled $265,146. In other words, individuals' Plan accounts were charged fees that *were over fourteen times greater* than the actual expenses.

88.     On information and belief, in 2011, the Plan charged participants fees of approximately 6.7%

89.     On information and belief, the total fees charged to Plan participants in 2011 were almost $10.2 million. These fees grossly exceeded actual expenses of the Plan in 2011 which,

Page 14 -  CLASS ACTION ALLEGATION COMPLAINT

according to the Form 5500 filed by the Plan, were $42,096. In other word, the participants were charged fees that were over *240 times* the actual expenses.

90.     The individual Defendants are required to set fees to meet actual Plan expenses.

91.     The individual Defendants breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries (1) defraying the reasonable expenses of administering the Plan; and (2) with the care, skill, prudence, and diligence under the circumstance then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and like aims, all in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), by charging grossly excessive fees to individuals' Plan accounts and/or failing to investigate lower cost alternatives.

92.     As a result, the Plan accounts, including Woerner's and Powell's accounts, were drained by charging fees grossly in excess of actual or reasonable expenses.

### COUNT V
### Violation of ERISA § 204(h) – Against All Defendants

93.     Plaintiffs repeat and incorporate the allegations contained in the forgoing paragraphs as if fully set forth herein.

94.     This count is brought pursuant to ERISA §§ 204(h) and 502(a)(3).

95.     Under ERISA § 204(h), 29 U.S.C. § 1054(h)(1), "[a]n applicable pension plan may not be amended so as to provide for a significant reduction in the rate of future benefit accrual unless the plan administrator provides the notice described in paragraph (2) to each applicable individual . . . ."

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

96.     The Plan is an "applicable pension plan" because it is "an individual account plan which is subject to the funding standards of section 412 of Title 26." 29 U.S.C. § 1054(h)(8)(B)(ii). A plan is subject to the funding standards of 26 U.S.C. § 412 if, with limited exceptions, it "include[s] a trust which qualified (or was determined by the Secretary to have qualified) under section 401(a)" of the Internal Revenue Code. 26 U.S.C. § 412(e)(1). The Plan is "designed to qualify under Code section 401(a)." (Plan § 1.2.) In the alternative, the Plan is an "applicable pension plan" because it is a "defined benefit plan" in that severed employees' accounts were credited with interest. 29 U.S.C. § 1054(h)(8)(B)(i).

97.     The elimination of the provision that Plaintiff's "account shall be credited with interest" in the November 2010 amendment constituted a significant reduction in the rate of future benefit accrual. *See* 26 C.F.R. § 54.4980F–1(A-6) ("[A]n amendment to an individual account plan reduces the rate of future benefit accrual" where it "is reasonably expected that the amendment will reduce the amount of contributions or forfeitures allocated for any future year."). Therefore, the notice prescribed by 29 U.S.C. § 1054(h)(2) was required.

98.     Notice under § 1054(h)(2) must be "written in a manner calculated to be understood by the average plan participant" and "provide sufficient information (as determined in accordance with regulations prescribed by the Secretary of the treasury) to allow applicable individuals to understand the effect of the plan amendment." 29 U.S.C. § 1054(h)(2).

99.     The statute requires the notice to be "provided within a reasonable time before the effective date of the plan amendment." 29 U.S.C. § 1054(h)(3).

Page 16 - **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

100.    Treasury regulations specify that the reasonable time for notice under these circumstances would be "at least 45 days before the effective date" of the amendment. 26 C.F.R. § 54.4980F–1(A-9).

101.    If an employer fails to provide a required Section 204(h) notice and the failure is "egregious," applicable individuals are entitled to the greater of "(i) the benefits to which they would have been entitled without regard to such amendment, or (ii) the benefits under the plan with regard to such amendment." 29 U.S.C. § 1054(h)(6)(A).

102.    An "egregious" failure is one where the failure is "within the control of the plan sponsor" and is, either (i) "an intentional failure," (ii) "a failure to provide most of the individuals with most of the information they are entitled to receive under this subsection," or (iii) "a failure which is determined to be egregious under regulations prescribed by the Secretary of the Treasury." 29 U.S.C. § 1054(h)(6)(B).

103.    Defendants' failure to provide notice of the amendment here was "egregious."

104.    Therefore, Plaintiffs and the Class are entitled to the greater of their benefits prior to the amendment or post-amendment.

105.    In the alternative, if Defendants' failure to provide notice was non-egregious, treasury regulations make clear that Plaintiffs may still have "recourse under section 502 of ERISA." 26 C.F.R. § 54.4980F–1(A-13). Plaintiffs therefore seek the same relief under ERISA § 502(a)(3) as is afforded for an egregious failure.

## **PRAYER FOR RELIEF**

WHEREFORE, Woerner and Powell, on behalf of themselves and the Class, requests that the Court:

Page 17 -  CLASS ACTION ALLEGATION COMPLAINT

(A)    enter judgment and award damages pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. § 1102(a)(1)(B), as to the Plan's violation of the anti-cutback rules;

(B)    enter judgment, strike the amendment, and award damages pursuant to ERISA Section 204(h);

(C)    enter judgment and award damages pursuant to ERISA Section 502(a)(2), 29 U.S.C. §1102(a)(2), as to the individual Defendants' breach of fiduciary duties;

(D)    award injunctive relief for an equitable accounting, hire independent party to investigate fees, and any other appropriate equitable relief under ERISA § 502(a)(3);

(E)    award Plaintiffs and the Class their expenses, costs, expert witness fees, and attorney fees, as well as compound pre-judgment and post-judgment interest; and

(F)    grant such other and further relief as the Court deems appropriate.

Dated this 7th day of March, 2013.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

By:  /s/ Steve D. Larson
        Steve D. Larson, OSB No. 863540
        Email: slarson@stollberne.com
        Scott A. Shorr, OSB No. 961873
        Email: sshorr@stollberne.com

209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204
Telephone: (503) 227-1600
Facsimile:  (503) 227-6840

And

**Robert A. Izard** (to be admitted *pro hac vice*)
Email: rizard@izardnobel.com
**Mark P. Kindall** (to be admitted *pro hac vice*)

Page 18 -  CLASS ACTION ALLEGATION COMPLAINT

Email: mkindall@izardnobel.com
**IZARD NOBEL LLP**
29 South Main Street, Suite 215
West Hartford, CT 06017
Telephone: (860) 493-6293
Facsimile: (860) 493-6290

**Attorneys for Plaintiffs**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600    FAX (503) 227-6840